UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

CIH INTERNATIONAL HOLDINGS, LLC,     :
                                     :
                         Plaintiff,  :
          - against -                :
                                     :
BT UNITED STATES, LLC,               :
                                     :
                         Defendant.  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: September 28 , 2011

10 Civ. 7790 (PAC)

OPINION & ORDER

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff CIH International Holdings, LLC ("CIH") brings this action against Defendant

BT United States, LLC ("BT") for breach of contract and breach of the implied duty of good

faith and fair dealing.  CIH seeks compensatory damages and a declaration that (1) BT has

materially breached two contracts; (2) due to BT's breach, CIH has no obligation to indemnify it

for certain tax claims; (3) BT's breach renders its notice of these claims a nullity; and (4) any and

all claims against remaining escrowed funds have expired.  CIH also asks the Court to direct the

parties' escrow agent to disburse the remaining escrowed funds to CIH.

BT moves to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6).  It argues that CIH

has failed to state a claim for breach of contract because it has not pleaded that the alleged

breaches caused any legally cognizable prejudice.  Since the claim for breach of the implied duty

is based on the same facts, BT argues, it too should be dismissed.

The motion to dismiss is GRANTED as to all four Counts in the Complaint.

## I.  BACKGROUND

In April 2007, BT agreed to acquire a Brazilian telecommunications company called CI

Holding Corporation ("CIHC") in exchange for a cash payment to CIHC's then-existing

shareholders, warrant/option holders, and holders of claims to options ("Equityholders").

(Defendant's Memorandum of Law ("Def. Mem.") at 4.)  CIH is the duly appointed

representative of the Equityholders.  The parties outlined their rights and duties related to the

acquisition in an agreement executed on April 19, 2007, and amended on June 14, 2007

("Merger Agreement").  (Compl. ¶ 10.)  The Merger Agreement provides, *inter alia*, that CIH

will indemnify BT for certain tax losses, and that BT will give CIH prompt notice of any tax

claims asserted against BT by the Brazilian government; keep CIH regularly informed of the

status of any tax audit or proceeding; notify CIH of the amount of any claim; adequately detail

the portion of any claim subject to indemnification; and provide CIH with tax returns for its

approval.  (Id. ¶¶ 13, 15.)  In addition to these covenants, the Merger Agreement also provides

that "CIH shall be entitled to control the conduct" and settlement of any proceeding solely

involving tax claims subject to indemnification.  (Id.)  CIH also has the right to enter proceedings

and consent to the settlement of any dispute involving a mix of claims—those for which CIH

must indemnify BT and those not covered by the Merger Agreement.  (Id.)

On June 14, 2007, the transaction closed.  (Id. ¶ 10.)  On that day, BT, CIH, and

Deutsche Bank National Trust Company ("Deutsche Bank") entered into an agreement for the

escrow of funds withheld from the Equityholders' cash payments for BT's acquisition of CIHC

(the "Escrow Agreement"; together with the Merger Agreement, the "Agreements").  (Id. ¶ 11.)

Under the Escrow Agreement, CIH agreed to place $25,759,923.02 in an account with Deutsche

Bank, from which the bank would disperse indemnification funds.  (Id.)  Certain members of CIH

also pledged an additional $14,240,076.98 to further secure CIH's potential indemnification

obligations to BT.  (Id. ¶ 12.)

The Agreements provide that on June 14, 2010 (three years after the transaction closed),

any remaining balance in the escrow account shall be released to CIH, less any funds retained to

cover pending claims.  (Id. ¶ 17.)  Claims filed after June 14, 2010 are null and unenforceable, even if they would have been eligible for indemnification.  (Id. ¶ 17.)

On June 10, 2010, BT delivered to CIH and Deutsche Bank a notice of certain tax claims pending before the Federal District Treasury Department in São Paulo, Brazil ("BT Tax Claims").  (Def. Mem. at 6.)  CIH argues that BT's notice of these tax claims was defective because it was not accompanied by the necessary information and documentation.  (Compl. ¶¶ 27-28.)  CIH claims this defect constitutes a breach.  (Id.)

CIH also alleges that BT breached other material terms of the Merger Agreement before giving notice on June 10, and that these breaches discharged CIH from its duties under the Merger Agreement and entitled CIH to a full payout of the remaining escrowed funds.  (Id. ¶¶ 19-24.)  Specifically, CIH claims that the Brazilian government notified BT of the BT Tax Claims "more than 18 months" before BT sent the June 10 notice to CIH.  (Id. ¶ 19.)  CIH alleges that it was not informed of the existence of certain claims until after BT had fully litigated them at the administrative level—when Brazilian law requires the submission of all facts, evidence, and legal arguments.  (Id.; Declaration of Tercio Chiavassa[1] ("Ciavassa Decl.") ¶¶ 20-21, 25-27.)  According to CIH, this late notice, along with seven other breaches of the Merger Agreement,[2] (see Compl. ¶ 19(a)-(g)), have materially prejudiced CIH by "prevent[ing

---

[1] CIH has submitted to the Court the declaration of Tércio Chiavassa, a Brazilian tax lawyer.  The Court may take judicial notice of the information provided in this declaration and consider it on a motion to dismiss.  See Figueiredo Ferraz Consultoria Engenharia de Projeto LTDA v. The Republic of Peru, 655 F. Supp. 2d 361, 367-68 (S.D.N.Y. 2007); see also Fed. R. Civ. P. 44.1 (allowing the court to "consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence").

[2] The alleged breaches include BT's failure to:

   (1) "promptly notify [CIH] in writing" of any tax claim subject to indemnity, (Merger Agreement § 11.02(a));
   (2) "consult with" and "keep [CIH] informed" regarding any such tax claim, (Id. §11.02(a));
   (3) notify CIH in advance of "amounts shown or proposed to be shown as due on any Tax Return" (a defined term including virtually all tax-related filings), (Id. § 11.02(c));

it] from taking timely action to correct, defend, participate in the defense of, compromise,

control, or arrange for a favorable settlement . . . of any of the [BT Tax Claims]." (Id. ¶ 22.)

Finally, CIH claims that BT filed the June 10 notice with "intent to injure and deprive

[the Equityholders and CIH] of the remaining funds in the escrow account to which they are duly

entitled."  (Id. ¶ 31.)  CIH alleges that, as of the date of the notice, BT knew that (1) the BT Tax

Claims were specifically excluded from the Merger Agreement's indemnification clause; and (2)

it had failed to comply with its obligations under this Agreement.  (Id. ¶ 30.)  BT has not

withdrawn its notice of claim, essentially encumbering the remainder of the escrowed funds.  (Id.

¶ 44.)

On October 12, 2010, CIH commenced this lawsuit, asserting that BT's breaches of the

Agreements, as well as the implied covenant of good faith and fair dealing, render BT's notice of

claims a nullity, and bar any further attempt to seek indemnification.  On January 7, 2011, BT

moved to dismiss on the grounds that CIH's claims are not justiciable, or adequately pleaded,

because CIH has not suffered any prejudice.

## II. DISCUSSION

### A. Legal Standard for a Motion to Dismiss

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court assumes

all facts alleged in the complaint to be true, and draws all reasonable inferences in favor of the

plaintiff.  Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).

---

(4) give CIH "a computation showing in adequate detail the portion of such [t]ax . . . subject to indemnification 30 days prior to filing a 'Tax Return,'" (Id. § 11.02(c));

(5) "deliver a draft of [any] such Tax Return to [CIH] for its review and approval at least thirty days prior to the date such Tax Return is required to be filed," (Id. § 11.04(b));

(6) afford CIH the opportunity to "control the conduct" of tax disputes for which BT may be indemnified, "including settlement thereof," (Id. § 11.03(b)); and

(7) afford CIH "the right to participate" in any such tax contest, (Id. 11.03(c)).

(Plaintiff's Memorandum of Law ("Pl. Mem.") at 2.)

Nevertheless, simple chanting of the elements of a cause of action, "supported by mere

conclusory statements, do not suffice . . . .  While legal conclusions can provide the framework

of a complaint, they must be supported by factual allegations."  Ashcroft v. Iqbal, 129 S. Ct.

1937, 1949-50 (2009).  To avoid dismissal, the complaint must contain "enough facts to state a

claim to relief that is plausible on its face," that is to say, facts that "nudge [] [the plaintiff's]

claims across the line from conceivable to plausible . . . ."  Bell Atl. Corp. v. Twombly, 550 U.S.

544, 570 (2007).

## B.  Declaratory Judgment Standard

The Court has jurisdiction over a declaratory judgment action "only if there is an 'actual

controversy,' 28 U.S.C. § 2201(a), which has been defined as one that is real and substantial . . .

admitting of specific relief through a decree of a conclusive character, as distinguished from an

opinion advising what the law would be upon a hypothetical state of facts."  E.R. Squibb & Sons,

Inc. v. Lloyd's & Cos., 241 F.3d 154, 177 (2d Cir. 2001) (internal quotations omitted).  "That the

liability may be contingent does not necessarily defeat jurisdiction of a declaratory judgment

action.  Rather, courts should focus on the practical likelihood that the contingencies will occur."

Emp'rs Ins. of Wausau v. Fox Entm't Grp., Inc., 522 F.3d 271, 278 (2d Cir. 2008) (internal

quotations omitted).  Specifically, the Court should examine: "(1) whether the judgment will

serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a

judgment would finalize the controversy and offer relief from uncertainty."  Duane Reade, Inc. v.

St. Paul Fire & Marine Ins. Co., 411 F.3d 384, 389 (2d Cir. 2005).

BT's central argument is that this action is not ripe for adjudication because there has

been no final determination that any money is owed on the BT Tax Claims.  (Reply Mem. at 2.)

"Until *and unless* that occurs, it cannot be known whether, if at all, Plaintiff may somehow be

'actually prejudiced.'" (Id.)  BT further argues that CIH's prejudice allegations are legally

insufficient in that CIH "failed to allege that it has suffered any 'tangible economic injury' or

other adverse consequence" as a result of BT's alleged breach of the notice provision in the

Merger Agreement.  (Def. Mem. at 13.)

Plaintiff counters that the "actual prejudice" language of § 11.02(a) only applies to the

initial notice provision and not the remainder of the covenants that CIH claims BT breached

(e.g., the covenant requiring BT to cede control of any tax contest to CIH).  (Pl. Mem. at 8.)  CIH

further contends that its position as an indemnitor entitles it to the no-prejudice rule New York

courts have adopted for primary and excess insurers, which presumes prejudice where an

indemnitee disregards his prompt-notification obligations.  (Id. at 10.)  Finally, CIH argues that

even if it is not entitled to the presumption of prejudice, CIH has adequately pleaded actual

prejudice.  (Id. at 14.)

Plaintiff's claims relating to breach of the Merger and Escrow Agreements are

subordinate to its argument that CIH was prejudiced by BT's delayed notice.  (See Compl. ¶¶

15(a)-(g), 22, 44).  Despite CIH's argument that the Court would be "rewrit[ing] the contract" by

applying the "actual prejudice" requirement of § 11.02(a) to all of the allegedly breached

covenants, (Pl. Mem. at 8), the breaches alleged in Counts 2 (Breach of the Merger Agreement)

and 3 (Breach of the Escrow Agreement) each depend on whether BT failed to provide notice.

Accordingly, whether CIH has alleged actual prejudice will determine whether there is presently

a justiciable controversy before the Court.

## C.  Governing Law

Under the New York rules that govern choice-of-law questions in diversity actions in

this Court, <u>see</u> <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 498 (1941), a contractual

choice-of-law provision is generally binding on a party claiming rights under a contract.  <u>See</u>,

e.g., <u>Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.</u>, 230 F.3d 549, 556

(2d Cir. 2000).  Both the Merger Agreement and the Escrow Agreement choose New York law.

(<u>See</u> Merger Agreement § 14.08; Escrow Agreement § 7.1.)  The Court will rely on New York

contract law to resolve the issues raised in this case.

### D. Notice as a Condition Precedent

BT argues that the notice obligation set forth in section 11.02(a)[3] of the Merger

Agreement was not a condition precedent to CIH's indemnification obligations, and that CIH

cannot be excused from its duty to indemnify BT unless it can show actual prejudice.  CIH

responds that the notice obligation was a constructive condition creating a dependent obligation

with CIH's duty to indemnify BT.

Under New York law, a court will not ordinarily construe a contractual duty as a

condition precedent "absent clear language showing that the parties intended to make it a

condition."  <u>Unigard Sec. Ins. Co., Inc. v. N. River Ins. Co.</u>, 594 N.E.2d 571, 573 (N.Y. 1992);

<u>see</u>, <u>e.g.</u>, <u>MHR Capital Partners LP v. Presstek, Inc.</u>, 912 N.E.2d 43, 47 (N.Y. 2009) (holding

that language in an escrow agreement stating that contract documents were not to be released

---

[3] The notice provision of the Merger Agreement provides in relevant part:

> After the Closing, each Party (whether the Buyer or the Equityholders' Representative, as the case may be) shall promptly notify the other Parties in writing of any demand, claim or notice of the commencement of an audit received by such Party or its Affiliates from any Governmental Authority or any other Person with respect to Taxes for which such other party may be liable pursuant to Section 11.01; provided, however, that a failure to give such notice will not affect such other Party's rights to indemnification under this Article XI, except to the extent that such Party is actually prejudiced by such failure or delay.

(Merger Agreement, §11.02(a).)

7

"unless and until" a party executed and agreed to a deal on terms outlined in the agreement was

an express condition precedent); Erickson Air-Crane Inc. v. E.A.C. Holdings, LLC., 927

N.Y.S.2d 320 (N.Y. App. Div. 1st Dep't 2011) (holding language in a stock purchase agreement

making demand for indemnification "contingent" upon compliance with notice and consent to

settlement provisions were express conditions "susceptible to only one reasonable

interpretation").  "In determining whether a particular agreement makes an event a condition,

courts will interpret doubtful language as embodying a promise or constructive condition rather

than an express condition."  Oppenheimer & Co., Inc. v. Oppenheim, Appel, Dixon & Co., 660

N.E.2d 415, 418 (N.Y. 1995).

Here, there is no clear language making prompt notice a condition precedent.  As the

Agreement states—and as CIH concedes—the failure to give prompt notification "will not

affect" BT's right to indemnification, except to the extent that the failure actually prejudices

CIH. (Merger Agreement § 11.02(a).)  CIH's indemnification obligations are not conditioned on

BT's notice obligations.  Contrary to CIH's argument, there is no basis for the Court to imply a

condition given the clear, plain meaning of the language in the notice provision.  See

Oppenheimer & Co., Inc., 660 N.E.2d at 418; Brad H. v. City of New York, 951 N.E.2d 743, 746

(N.Y. 2011) ("A written agreement that is clear, complete and subject to only one reasonable

interpretation must be enforced according to the plain meaning of the language chosen by the

contracting parties."  (citations omitted)).

Similarly, in Red Ball Interior Demolition Corp. v. Palmadessa, 947 F. Supp. 116, 123

(S.D.N.Y. 1996), the parties entered into an indemnification agreement under which plaintiff

agreed to indemnify defendant for liabilities arising out of plaintiff's business.  947 F. Supp. at

119.  Plaintiff argued that a clause in a settlement agreement requiring defendant to give notice

of a claim "as soon as practicable" was a condition precedent to plaintiff's obligation to indemnify defendant. Id. at 123.  Although the Court observed that plaintiff's duty to indemnify defendant "is necessarily conditioned upon his receiving notice of the claim," merely delayed notice did not excuse plaintiff's indemnification obligations. Id. at 124.  The court held that the plaintiff's right to contest a claim—like CIH's right to "control the conduct" of tax disputes for which BT may be indemnified, (Compl. ¶ 15(f))—"is insufficient to create a presumption that prompt notice is a condition precedent to [plaintiff's] obligation to pay," and defendant was entitled to indemnification.  947 F. Supp. at 124.  The same reasoning applies here.  CIH must therefore plead that it was "actually prejudiced" as required by § 11.02(a) of the Merger Agreement before it may avoid its indemnity obligations to BT.

### E.  **The No-Prejudice Rule**

Notwithstanding the "actual prejudice" requirement set forth in § 11.02(a) of the Merger Agreement, CIH argues that New York's no-prejudice rule entitles CIH to proceed without any showing of prejudice due to BT's allegedly late notice.  (Pl. Mem. at 9, 14.)  Under this insurance law doctrine, primary and excess insurers "need not show prejudice before [they] can assert the defense of noncompliance."  Security Mut. Ins. Co. of New York v. Acker-Fitzsimmons Corp., 293 N.E.2d 76, 78 (N.Y. 1972).  Rather, they may rely on a presumption of prejudice if they can show that their insureds failed to give prompt notice of a claim.  See Am. Home Assurance Co. v. Int'l Ins. Co., 684 N.E.2d 14, 16-17 (N.Y. 1997).  Unigard Sec. Ins. Co., Inc. v. N. River Ins. Co., 594 N.E.2d 571, 581 (N.Y. 1992) ("It is settled New York law that the notice provision for a primary insurer operates as a condition precedent and that the insurer need not show prejudice to rely on the defense of late notice.").  This rule creates an exception to the

general tenet of contract law that "one seeking to escape the obligation to perform under a contract must demonstrate material breach or prejudice."  Unigard, 594 N.E.2d at 581.

New York courts have never applied this exception outside of the insurance context, however.  See, e.g., Unigard, 594 N.E.2d at 573 (referring to the no-prejudice rule as a "limited" exception for insurance contracts); Am. Home, 684 N.E.2d at 16-17; Rekemeyer v. State Farm Mut. Auto. Ins. Co., 828 N.E.2d 970, 975 (N.Y. 2005).  Federal courts have split on whether to extend this rule to indemnitors, compare Ballard v. Parkstone Energy, LLC, 664 F. Supp. 2d 325, 330-31 (S.D.N.Y. 2009) (holding that the parties' purchase agreement did not require a showing of prejudice for plaintiff to assert that defendant waived its claim for indemnification); EMI Catalogue P'ship v. CBS/FOX Co., No. 86 Civ. 1149 (PKL), 1994 WL 163700, at *10 (S.D.N.Y. Apr. 28, 1994) (vacated on other grounds) (allowing indemnitor who was "functioning analogously to a primary insurer" the benefit of the no prejudice rule), with Smurfit Newsprint Corp. v. Se. Paper Mfg. Co., 368 F.3d 944, 952-53 (7th Cir. 2004) (holding that the district court improperly extended New York's no-prejudice rule to the notice for indemnification provisions in an asset purchase agreement); Red Ball, 947 F. Supp. at 123 (declining to create a new exception to the general rule, "despite some superficial similarities between the indemnification agreement and insurance contracts," based on the distinction between the right, as opposed to the obligation, to litigate claims (citing Unigard, 594 N.E.2d 571)).  The Seventh Circuit's decision in Smurfit is most persuasive on this point.

In Smurfit the court described the unique characteristics of the insurance business that justify a no-prejudice rule in that context:  "A principal foundation of the insurance business is the necessity of processing claims and making payments to the insured.  An insurance company can be faced with hundreds, if not thousands, of claims at any given time.  Such circumstances

require particularly strict standards for processing claims that allow the insurer to allocate its

financial and human resources more efficiently." 368 F.3d at 953. Even though the defendant-

indemnitor, "like an insurance company (or any other business), has an interest in protecting

itself from fraud and participating in settlement discussions, [defendant] is not routinely engaged

in the business of insurance. Therefore, it is not faced with the volume of claims routinely facing

an insurance company." Id. The court also observed that New York insurers are subject to

statutory reserve requirements that are not necessarily applicable beyond the insurance context.

Id. Accordingly, the court refused to apply the no-prejudice rule to an ordinary indemnification

agreement and concluded that defendant's interest in protecting itself from fraud and its

contractual right to participate in settlement discussions was "adequately protected by the more

general rule that it must show prejudice from a failure to receive prompt written notice." Id.

This Court agrees and adopts Smurfit's reasoning. CIH's arguments premised on insurance law

are misguided, and CIH must plead actual prejudice in order to avoid dismissal. See Unigard,

594 N.E.2d at 581 (requiring reinsurer to satisfy "the general contract law principal that a breach

will excuse performance only if it is material or demonstrably prejudicial").

### F. Actual Prejudice

Under New York law, to plead prejudice for purposes of a breach of contract claim, a

plaintiff "bears the burden of showing that it suffered tangible economic injury" as a result of

the alleged breach. Unigard Sec. Ins. Co. v. North River Ins. Co., 4 F.3d 1049, 1069 (2d Cir.

1993) (citing Unigard, 594 N.E.2d at 572). An indemnitor's loss of the right to associate in the

defense of claims is insufficient to constitute prejudice. Id. at 1068-69.[4]

---

[4] CIH cites American Ins. Co. v. Fairchild Indus., 56 F.3d 435 440 (2d Cir. 1995), and Argo Corp. v. Greater N.Y.
Mut. Ins. Co., 827 N.E.2d 762 (N.Y. 2005), for the opposite proposition. These cases, however, are inapposite since

### 1.   Merger Agreement

CIH claims that BT breached at least seven covenants in the Merger Agreement that were included "to avoid situations where CIH was not notified, consulted or informed about tax claims or potential tax liabilities, in order to afford CIH the opportunity to enforce and protect its rights under the Merger Agreement and to participate in the development and presentation of responses or defenses to such claims and/or liabilities." (Compl. ¶ 16.) CIH alleges that these covenants "were so substantial to the assent of the Equityholders that the object of the Equityholders in agreeing to the indemnity provisions in the Merger Agreement would be defeated if they were not enforced." (Id.) CIH alleges that these breaches caused prejudice by denying CIH the opportunity to participate in and control the Brazilian tax proceedings; settle the tax claims in a timely manner; prepare responses and defenses; secure appropriate administrative exemptions or credits; and plan its business affairs in accordance with anticipated liabilities. (Compl. ¶¶ 22, 23, 44.) CIH also maintains that it may be unable to raise certain legal and factual arguments for tax claims that have moved beyond the initial level of administrative proceedings. (Id. ¶ 23.)

These allegations are insufficient to plead prejudice. Despite CIH's argument that BT's decision to delay notice "until immediately before the close of the three-year indemnity period plainly deprived CIH of its bargained-for right to play a meaningful role in the tax matters," and that "[l]osing these bargained-for rights was an obvious harm in and of itself," (Pl. Mem. 15), CIH fails to allege that it suffered any "tangible economic injury" as a result of the allegedly delayed notice. See Unigard, 4 F.3d at 1069.

---

they deal with a primary insurer. The special considerations unique to the insurance business are not present in this case, however, given the nature of the parties and the agreements at issue. See discussion Part II.E, supra.

Moreover, not only did CIH receive timely notice from BT under the terms of the Merger Agreement, but the Complaint does not allege that CIH took any action to exercise its control rights after it received notice.[5]  CIH counters that it is now procedurally barred from presenting evidence at the appellate level in Brazil.  (Pl. Mem. at 17.)  As the declaration of CIH's own Brazilian tax expert, Tércio Chiavassa, suggests, however, this explanation is inconclusive.

According to Mr. Chiavassa, tax claims in Brazil are first adjudicated in an "administrative sphere" and may then be appealed to the "judicial sphere," where the taxpayer may litigate an adverse administrative decision, file an injunction to suspend enforcement of the tax claim, or pursue other remedies.  (Chiavassa Decl. ¶¶ 11-15.)  Here, "all 10 tax claims are still being discussed in the administrative sphere" and "it will also be possible to discuss them in the judicial sphere." (Id. ¶¶ 28, 30.)  Even if CIH did not have an opportunity to participate in proceedings and control defenses at the Brazilian administrative level, CIH will still be able to influence the ultimate resolution of these tax claims.[6]  Having taken no steps to assert these "valu[able]" bargained-for rights, (Pl. Mem. 15), and with additional opportunities yet available, but so far not pursued, CIH's argument that the "deprivation of [its] right to play a meaningful role in the case . . . *is itself* an integral part of the harm inflicted" must fail.  (Id. 15.)

To the extent that CIH argues it lost the opportunity to settle tax claims under the Brazilian government's amnesty program "rather than risk payment of substantial interest and

---

[5] CIH's claims of prejudice have a hollow ring.  At oral argument CIH's counsel conceded that "[i]t is correct that CIH has not requested to take control of any of the defense of any of the claims."  (Tr. at 18.)  Likewise, counsel for BT stated that CIH "never advised [BT] of any erroneous or missing arguments that we could have made or should have made [in the tax proceedings]. . . .  Plaintiffs never asked us for any documents even being given the opportunity by your Honor for document discovery."  (Id. at 33.)

[6] Counsel for CIH also stated at oral argument that "there are some constitutional provisions under the law of Brazil which may, depending on judicial discretion, enable a party to enlarge the record at a later stage."  (Tr. at 37.)

penalties," (Pl. Mem. 15), this argument is purely speculative and does not demonstrate

prejudice, as BT may ultimately win all of the pending tax claims.  See Starr v. Sony BMG

Music Entm't., 592 F.3d 314, 321 (2d Cir. 2010) (stating that "[f]actual allegations must be

enough to raise a right to relief above the speculative level, on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)" (quoting Twombly, 550 U.S. at

555)); U.S. Bank Nat'l Assoc. v. Stewart Title Ins. Co., 832 N.Y.S.2d 223 (N.Y. App. Div. 2d

Dep't 2007) (holding that defendant's allegations of prejudice on ground that plaintiff's allegedly

untimely notice prevented defendant from participating in foreclosure action "so as to mitigate

its liability and protect its interests were purely speculative").

       Accordingly, CIH has failed to allege that it suffered actual prejudice sufficient to

present a legal controversy in its declaratory judgment claim.  See 28 U.S.C. § 2201(a); E.R.

Squibb & Sons, Inc., 241 F.3d at 177.  CIH's request for declaratory judgment in Count 1 is

therefore not properly before this Court and is dismissed.  Since Plaintiff's claims relating to

breach of the Merger Agreement are subordinate to its claim that CIH was prejudiced by BT's

delayed notice, see supra at 6, Count 2 is also dismissed.

       **2.  The Escrow Agreement**

       CIH alleges that BT breached the Escrow Agreement by providing notice to the escrow

agent before properly notifying CIH and by failing to detail the nature of certain claims, as

required by § 4 of the Escrow Agreement.  (Compl. ¶¶ 48-50.)  Both allegations are based on the

adequacy of the contents of the notice, but CIH merely quotes the requirement in § 4 that the

notice sets forth a "reasonably detailed description of the nature of the claims and the method of

computation of the amount of damages or tax losses claimed."  (Id. ¶¶ 28, 50.)  Since CIH does

not specifically state what information is missing from the notice, it has not pleaded sufficient

factual allegations to state a plausible claim for relief.

CIH also claims prejudice due to its loss of use of the remaining escrowed funds.  This

cannot be, however.  Since the encumbrance is only prejudicial if it constitutes a breach, such

circular reasoning collapses on itself; allowing the breach to constitute the prejudice would

eliminate the actual prejudice requirement.  Accordingly, CIH has failed to adequately plead

breach of the Escrow Agreement and Count 3 is therefore dismissed.

### G.   Breach of the Implied Duty of Good Faith and Fair Dealing

The duty of good faith and fair dealing is an implied duty to use "reasonable efforts" to

advance the contract's primary goals, Wood v. Lucy, Lady Duff-Gordon, 222 N.Y. 88, 90-91

(1917), and "not to act arbitrarily or irrationally in exercising contractual discretion." Dalton v.

Educ. Testing Serv., 87 N.Y.2d 384, 389 (1995).  A party breaches the covenant when it acts in a

manner that blocks the other party from the enjoying benefits of the bargain, even if the action

does not breach any of the contract's terms.  See Kirke La Shelle Co. v. Paul Armstrong Co., 188

N.E. 163, 167 (N.Y. 1933).

A claim for breach of the duty of good faith and fair dealing, however, does not provide a

cause of action separate from a breach of contract claim.  See, e.g., Harris v. Provident Life &

Acc. Ins. Co., 310 F.3d 73, 80-81 (2d Cir. 2002); Horowitz v. Am. Int'l Grp., No. 09 Civ. 7312

(PAC), 2010 U.S. Dist. LEXIS 103489, at *31 (S.D.N.Y. Sept. 30, 2010).  As a result, "[a] claim

for breach of the implied covenant will be dismissed as redundant where the conduct allegedly

violating the implied covenant is also the predicate for breach of covenant of an express

provision of the underlying contract." ICD Holdings S.A. v. Frankel, 976 F. Supp. 234, 243-44

(S.D.N.Y. 1997) (dismissing claim for breach of implied covenant of good faith and fair dealing

where the claim "rest[ed] entirely on the breaches of the purchase agreement alleged in the first claim for relief").

Here, CIH claims in Count 4 that BT breached the implied covenant of good faith and fair dealing in the Agreements two ways. First, CIH alleges that "BT's continuing failure and refusal to promptly notify, consult with and keep CIH regularly informed regarding the status of the Brazilian Tax Claims constitute material breaches of both the underlying agreements and of the implied covenant of good faith and fair dealing." (Compl. ¶ 53.) This allegation is inextricably tied to the material breaches alleged in Count 2 and thus cannot support a claim for breach of the implied duty. Second, CIH alleges that BT has materially breached the implied covenant in the Escrow Agreement by failing to instruct the Escrow Agent to release escrowed funds, as BT "has not in fact incurred or suffered tax losses for which it is entitled to indemnification under Article XI of the Merger Agreement." (Id.) Here, too, CIH predicates the breach of the implied duty on the same facts supporting a material breach of the Escrow Agreement, namely BT's refusal to instruct the Escrow Agent to release escrowed funds to the Equityholders, as alleged in Count 3.[7] Since a claim for implied breach cannot be premised on the same set of facts as a claim for express breach, Count 4 is dismissed.[8]

---

[7] Count 3 alleges in part that BT "has not complied with its material obligations under the Escrow Agreement, and in particular, BT's continuing instruction to the Escrow Agent 'to retain the remaining part of the Escrowed Amounts' without providing any prior notice to CIH regarding the existence of the claims listed under Annex A to the Notice of Claim, and BT's continuing refusal to instruct the Escrow Agent to release the remaining Escrowed Amounts to the Equityholders are material breaches of the Escrow Agreement." (Compl. ¶ 49.)

[8] CIH argues that even if the claim for breach of the covenant of good faith and fair dealing were based on the same facts supporting the other Counts in the Complaint, Count 4 "would still not be subject to dismissal at this stage because CIH is entitled to plead a claim based in quasi-contract in the alternative." (Pl. Mem. at 23 n.9.) CIH is correct that under Federal Rule of Civil Procedure 8(a), CIH may plead in the alternative; it has simply failed to allege facts sufficient to state a claim for breach of the implied duty. See Maalouf v. Salomon Smith Barney, Inc., No. 02 Civ. 4770, 2003 WL 1858153, at *7 ("The fact that [plaintiff] may only *recover* on one claim, either contract

## CONCLUSION

For the foregoing reasons, BT's motion to dismiss is GRANTED. The Clerk is directed

to enter judgment and terminate this case.

Dated: New York, New York
September 28, 2011

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge

---

or quasi-contract, certainly does not preclude him from *pleading* unjust enrichment in the alternative.") (emphasis in original).